CHESTER D. SMALL *vs.* CHESTER G. ROBINSON.

Cumberland. Opinion April 30, 1879.

*Bailment. Lien.*

The bailee of personal property can impose no lien on the property bailed, as against the owner, without his knowledge and consent.

REPLEVIN, for two pairs of wheels, and other parts of a hack. Writ dated June 30, 1877.

Plea, the general issue, with brief statement that the title and right of possession in the goods and chattels taken upon said writ were in the defendant. Tried by the justice of the superior court for Cumberland county, without the intervention of a jury, October term, 1877, subject to exceptions in matters of law.

On September 12, 1874, one Isaiah F. Staples purchased of the plaintiff, or agreed to purchase of him, the hack, of which the wheels and other property replevied form part, and gave to the plaintiff the following note :

" Portland, September 12, 1874. For value received I promise to pay Chester D. Small or order the sum of seven hundred and fifty dollars, with interest at rate of eight per cent per annum, as follows, viz : ten dollars each and every week from and after the date of these presents, until the principal and interest is paid, it being understood and agreed that interest shall be allowed at the end of each month on the payments so made, at the same rate of eight per cent per annum.

" The condition for which the above note is given is one bay horse called 'Tom,' one bay horse called ' Charlie,' one second hand hack, licensed No. 36, one set of double harnesses, one set of runners. Nevertheless, it is understood and agreed that the property in the said horses, hack, harnesses and runners is not to pass to me, but remain the property of Chester D. Small until the above note and interest is paid. Isaiah P. Staples. [L. S.] "

Witnessed and recorded in city clerk's office, Portland, September 16, 1874.

Said Staples was a hack driver, and, after giving the note, received and remained in possession of the hack with the knowl-

edge and consent of the plaintiff, using it in his (Staples') business, until October, 1876, when Staples left the hack in the shop of the defendant, who is a mechanic, for general repairs, which were made by the defendant, and from the testimony it appears that such repairs were suitable and necessary.

The parts of the hack which are replevied remained in the defendant's possession, he having done work upon them and claiming a lien for his pay, until June, 1877, when the plaintiff, having in January, 1877, given notice of foreclosure, as it is termed, and which notice was served and recorded on January 10, demanded of the defendant the possession of said goods and chattels, and, on defendant's claiming the right to hold them against the plaintiff by force of his (defendant's) lien as a mechanic, and refusing to yield possession, the plaintiff caused them to be taken upon the writ of replevin aforesaid.

The case shows that, after the note was given and before these repairs were ordered, said Staples had procured other repairs upon the hack to be made at defendant's shop, and defendant testified as follows in regard to a conversation between himself and the plaintiff upon the subject of repairing the hack :

Q. " State whether you knew that Small knew of his (Staples') bringing the hack to your shop for repairs from time to time ? "

A. " Yes : I think he knew it a good many times in the two or three years. I had done the repairs, pretty much all, on it from the time he let it go."

Q. " Ever have any conversation with Small about it ? "

A. " I think I did, pretty soon after Staples took it. I asked him if that hack was his to pay repairs on it—if he should stand repairs if they run up. He said, ' No ; I have nothing to do with the repairs, you needn't look to me for any repairs.' "

Q. " Did he tell you to whom you must look ? "

A. " Didn't tell me anything about it, any more than Staples had the hack and he must pay his repairs."

The justice presiding found that there was also testimony tending to show that Staples expressly agreed to defendant's remaining in possession of the property replevied, until his bill for repairs was paid, but that there was no evidence that Small ever

gave Staples authority to subject the hack to a lien for repairs, and ruled, for the purposes of the hearing at *nisi prius*, that the law implies no such authority, and that the lien of the defendant was not valid against the plaintiff, and that the said defendant did take, etc.

The defendant alleged exceptions.

*G. F. Gould*, for the plaintiff.

*S. C. Andrews & A. F. Moulton*, for the defendant, contended, *inter alia*, that the defendant had a right to hold the property replevied by virtue of a common law lien which he, as mechanic, had upon the same for repairs ; that the whole purpose of the lien at common law is to benefit trade by insuring to the workman his pay. 3 Hill. (N. Y.) 491.

If an agent has a valid lien, the owner cannot maintain replevin. *Newhall* v. *Dunlap*, 14 Maine, 180.

The defendant was in possession ; he had increased the value of the property by his labor and materials furnished, and at the instance and direction of the owner, or his implied and authorized agent. *Abbot* v. *Harmon*, 7 Maine, 118. *Weston* v. *Davis*, 24 Maine, 374. Story Agency (5 ed.), § 56.

APPLETON, C. J., This is an action of replevin for a pair of wheels and other parts of a hack, upon which the defendant claims a lien, by reason of work done by him upon them.

The plaintiff is the owner of the hack. It was left for repairs by one Staples, who was in possession under a contract of purchase, the terms of which were unperformed. The defendant was aware of the plaintiff's title. The presiding justice found that the plaintiff had never given Staples any authority to subject the hack to a lien for repairs, and ruled that no such authority was to be implied, as a matter of law, from the relation of the parties.

" A lien," observes Shaw, C. J., in *Hollingsworth* v. *Dow*, 19 Pick. 228, " is a proprietary interest, a qualified ownership, and, in general, can only be created by the owner, or by some person by him authorized." Here the fact of authority is negatived.

The plaintiff never became the debtor of the defendant, and never authorized the imposition of any lien on his property. *Globe Works* v. *Wright*, 106 Mass. 207. A mortgagor of horses cannot, without the knowledge, acquiescence and consent of the mortgagee, intrust the horses to be boarded so as to subject them to a lien for keeping, as against the mortgagee. *Sargent* v. *Usher*, 55 N. H. 287. Cushing, C. J., in the case last cited, says, " I have seen no case in which it has been held that a party who permits another to have possession of his personal property, by so doing in law, constitutes that other his agent to sell or pledge the property." So a bailee can give no lien upon property bailed, as against the owner. *Gilson* v. *Gwinn*, 107 Mass. 126.

The defendant could acquire no title from Staples, when he had none.

The exceptional case of the inn-keeper rests upon the principle that as he is by law bound to receive a guest and his goods, and might be liable to indictment for not so receiving them, he shall have a lien on such goods as he is bound to receive, whether owned by his guest or not.

*Exceptions overruled.*

WALTON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.