STEPHEN BLAIN AND JEAN E. LAFOND

v.

THEODORE M. MANNING.

*Chattel Mortgages—Rights of Assignee—Possession—Jurisdiction.*

1. The assignee of past due notes secured by a mortgage on domestic animals, the possession of which remains in the mortgagor, takes the notes subject to the claim of an agister, or person who keeps, feeds or pastures the animals, for his charges.

2. Where, after part of the evidence has, by stipulation of the parties, been heard by the judge while sitting in another county, the cause is again called for hearing and determined in the proper county, objection that the cause was partly heard without the jurisdiction of the court can not be raised for the first time on appeal from the judgment.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Du Page County; the Hon. C. W. UPTON, Judge, presiding.

Mr. B. M. SHAFFNER, for appellants.

Mr. T. M. MANNING, for appellee.

LACEY, J. This was an action of replevin brought by appellants against appellee to recover the possession of two horses and a road cart. The appellants claimed the goods and property by virtue of a chattel mortgage, executed by A. K. Manning, brother of appellee, to Belle Goodselle Baldwin, through

Blain v. Manning.

her husband acting as her agent. The appellants became the owner of the notes and mortgage by assignment May 12, 1888. The appellee, from whose possession the property was taken by the writ of possession, claimed it by virtue of an asserted lien for agisting and finding the stock to the amount of $251.88, and he kept the property for hire and the service of his horse to the two mares. The cause was finally heard by the court below without a jury at its September, 1889, term, and resulted in the court finding the issues joined for the defendant and no damages, the right of possession being the issue, and the court rendered judgment for the defendant, with damages of one cent, and ordered a writ of *retorno habendo* to issue for the property replevied.

Motion by appellants for new trial being overruled and judgment rendered on the verdict they bring the cause here by appeal.

The mortgage was given ostensibly to secure two promissory notes for $350.06 each, bearing even date with the mortgage, which bore date August 26, 1887, and were due as follows: one in four months from date, and the other two years from date. It appears that the mortgage was fraudulent to at least the extent of the last note, and to $25 included in the first note. The last named note was given, it appears from the evidence, for the purpose of enabling the mortgagor to cover up his property, he being in litigation with his wife in a divorce proceeding. There is also a question in the case whether the mortgage was void by reason of its not being acknowledged in the township where the mortgagor resided. It is somewhat doubtful whether or not the mortgagor resided in the town of West Chicago, the place of the acknowledgment, but as we view the case, it will not be necessary to pass on this question. The note first falling due was long past due when sold to appellants and was the only one having any valid consideration, and this had been paid in part by the mortgagor, there only remaining due on it at the time of replevin a sum of from $231 to $287.

We therefore need take no notice of the second or fraudulent note, but treat it as though it were not in the mortgage, even though the mortgage could be held valid as to either.

The evidence shows that the property was allowed to remain with the mortgagor and appellee for nearly a year, or until this replevin October 8, 1888, after the first note became due. The appellee was the owner of a farm and living on it in Du Page County, Ill., and the mares included in the mortgage were taken to his farm, there to be agisted and bred and cared for by appellee; and besides this, the mortgage gave the mortgagor liberty by separate stipulation to take the mares anywhere he pleased, thus enabling him to get credit of persons on the security of the property who were in ignorance of the existence of any mortgage. One mare was taken to appellee's farm in September, 1887, and the other August 11, 1887, and the cart and "Peregrine" afterward. The price of breeding was $50 for each mare. The statute provides that "any person shall have a lien upon the horses and carriages and harness kept by them for the proper charges due for the keeping thereof, and expenses bestowed thereon at the request of the owner or the person having the possession thereof." Also: "Agisters and persons keeping, yarding, feeding or pasturing domestic animals shall have a lien upon the animals agisted, kept, yarded or fed for the proper charges due," etc. S. & C. Annotated Statutes, pages 15, 32, par. 49, 50.

It would appear from the above statute that the lien of appellee was valid both as against the mortgagor and the appellants, the assignees of the mortgage. And we may say, without such a statute the appellee would have a lien on the property in his hands and a right to retain the possession thereof until his debt against the mortgagor was paid. A mortgagee in this State must take possession of the mortgaged property the next day after the running of the days of the grace after note and mortgage matures, if there is nothing to prevent, and within a reasonable time at all events. Reed v. Eames, 19 Ill. 594; Atkins v. Byrnes, 71 Ill. 326. The appellants herein knew when they purchased the notes that nothing was due on the second note; that it was fictitious. The appellants can take no greater rights by their assignment as against appellee than the original mortgagee could have had in case she had retained the ownership of the notes.

Blain v. Manning.

The mortgage being fraudulent and past due at the time the most of appellee's claim accrued, the appellants have no right to recover without paying his claim.

The appellants insist that the trial court lost jurisdiction on account of hearing a part of the evidence in Chicago. It appears that when the trial was entered upon at the March term, 1889, a jury, by agreement, was waived, and the cause partly heard, when the record shows, by stipulation of parties, the cause was continued and the remainder of the evidence was to be heard at chambers; the remaining testimony was so heard at chambers, in Chicago, without objection, and, at the September term, 1889, of the Circuit Court, in Du Page county, the cause was again brought on for hearing, and plaintiff and defendant were present by their respective attorneys, as shown by the record, and the judgment recites that the evidence was heard in Chicago, by the stipulation as agreed, and thereupon the court rendered judgment. No objection was made to the court passing on the case on the evidence so heard or exception taken; and the bill of exceptions shows that all the evidence was heard on the trial of the case. That must have been at the time when judgment was rendered. If the evidence was taken in Chicago, it was so taken and preserved by the official reporters and then submitted to the court at the trial, as the bill of exceptions shows, and no objection or exception was taken or made to hearing the evidence so taken. Nor was any such ground assigned on motion for new trial.

It is too late to make any such objection here for the first time, even if it could be allowed, after the solemn stipulation of the parties. No question of jurisdiction can arise, as the cause was finally heard in open court.

Finding no error in the record, the judgment of the court below is affirmed.

*Judgment affirmed.*

Judge UPTON, having tried the case in the court below, took no part in the hearing in this court.