## ATLAS SECURITIES COMPANY v. GROVE.
### [No. 11,384.    Filed December 19, 1922.]

1. **APPEAL.**— *Questions Reviewable.*— *Constitutionality of Statute.*—*Failure to Raise Question Below.*—Where no question as to the constitutionality of a statute is raised in the trial court, it will not be reviewed on appeal.  p. 147.

2. **LIVERY STABLE AND GARAGE KEEPERS.**—*Lien for Repairs on Automobile.*—*Lienor's Burden of Proof.*—*Conditional Sale of Automobile.*—*Statutes.*—Where an automobile was sold under a contract reserving title in the vendor until the purchase price was paid and providing that the buyer should keep the automobile free from liens and make all repairs necessary to keep it in first-class condition, in an action against the buyer by an automobile mechanic seeking to enforce a lien under §8294d et seq. Burns' Supp. 1921, Acts 1915 p. 621, as to liens for repairs, etc., on automobiles, for repairs made at the instance of the buyer, in which action the vendor intervened, the burden was on the plaintiff to allege and prove that the repairs were necessary to keep the automobile in good condition, and that they were made with the consent of the vendor.  pp. 153, 156.

3. **LIVERY STABLE AND GARAGE KEEPERS.**—*Conditional Vendor's Lien.*—*Statutory Lien.*—*Priority.*—Where a statutory lien is for materials or work on an automobile not necessary for its preservation and not authorized by the conditional vendor, and the statute is silent on the question, the lien for work and materials does not take priority over the lien or right of the conditional vendor.  p. 156.

From Sullivan Circuit Court; *William H. Bridwell,* Judge.

Action by Elza Grove against one Bedwell in which the Atlas Securities Company intervened.  From a judgment for plaintiff, the intervener appeals.  *Reversed.*

*Louis Rosenberg* and *Lindley & Bedwell,* for appellant.

McMAHAN, J.—Ray and Walter Wyman being the owners of an automobile sold the same to one Bedwell on October 25, 1920, for the sum of $317.40, $100 of which was paid in cash at the time of sale, the balance being evidenced by six promissory notes payable in a bank in

this state, and due in one, two, three, four, five and six months from date. The contract of sale was in writing and provided that the title of the automobile should remain in the vendors until the whole of the purchase price was paid; that Bedwell should keep the automobile free from all liens and encumbrances on account of "taxes, assessments or otherwise," and that he should make all repairs necessary to keep it in first class condition. The machine at once passed into the possession of Bedwell, who, about one week later took it to appellee, a mechanic to have some repairs made on it. After the repairs were made the machine was turned back to Bedwell. Appellee filed notice of his intention to hold a lien on the automobile pursuant to §8294d *et seq.* Burns' Supp. 1921, Acts 1915 p. 621. Bedwell having failed to pay appellee the latter filed his complaint herein against Bedwell to foreclose a claimed mechanic's lien on the automobile for the amount of such repair bill.

Appellant filed an intervening petition in which it claimed to be the owner of the automobile and on being permitted to defend, without any amended complaint being filed, it filed an answer in three paragraphs. The first paragraph of answer alleged that appellant was and had been the owner of the automobile since October 25, 1920; that appellant did not authorize the making of any repairs or the furnishing of the materials described in the complaint and that such repairs and materials were furnished at the request of Bedwell alone. The second paragraph was withdrawn.

The third paragraph alleged that Ray and Walter Wyman being the owners of the automobile did, on October 25, 1920, sell and deliver the same to Bedwell under a conditional sale contract, wherein it was agreed that the title thereto should remain in the Wymans until the purchase price was fully paid. This contract was made a

part of the answer and provided that Bedwell should keep the automobile free from all liens and encumbrances on account of "taxes, assessments or otherwise;" that all repairs or accessories attached to the automobile during the life of the contract became a part thereof, and required Bedwell to make all repairs necessary to keep the property in first class condition. It also provided that the vendors, in case Bedwell failed to perform his part of the contract or failed to pay the balance due on the purchase price, or attempted to encumber the automobile had the right to the possession of the automobile. It was further alleged in this paragraph of answer that said Ray and Walter Wyman on October 25, 1920, sold and assigned said contract and all their right and interest in said automobile to appellant; that after said assignment to appellant it had been and was the owner of said automobile; that at no time prior to the making of the repairs mentioned in the complaint did appellant have any knowledge that Bedwell would cause said repairs to be made; that there were no negotiations between appellant and Bedwell concerning the making of such repairs; that the only right and powers Bedwell had in relation to and concerning the automobile were those contained in said contract; that Bedwell had no authority to use or repair said automobile other than set out in the contract; that appellant never at any time or manner other than set out in the contract authorized, suffered or permitted appellee or Bedwell to make any repairs; that all repairs made by appellee were made after October 25, 1920, and that Bedwell had failed to pay the balance due and owing appellant on the purchase price.

A demurrer having been sustained to each of these answers appellant excepted and refusing to plead further the court entered a decree in favor of appellee foreclosing the lien.

The first contention of appellant is that the court erred in sustaining the demurrer to each paragraph of answer, for the reason that the Motor Vehicle

1. Lien Law, Acts 1915 p. 621, *supra,* is unconstitutional. But this question was not raised in the trial court, either by demurrer or otherwise and consequently is not presented on appeal. If it were, it would be our duty to transfer this appeal to the Supreme Court for want of jurisdiction. As bearing upon this question, however, see *Jensen* v. *Wilcox Lumber Co.* (1920), 295 Ill. 294, 129 N. E. 133, where a similar statute was held void on the ground that it was class legislation. Appellant, however, has presented other questions calling for serious consideration.

In so far as the record discloses, appellee had no actual notice of the retention of title, nor did appellant know that the automobile had been placed with appellee to be repaired. There is no allegation in the complaint or in either paragraph of answer that the repairs made by appellee were, or were not necessary to keep the automobile in "first class condition."

It is to be noted that we are not dealing with a claim of a mechanic to a common-law lien which depends for its validity, as to third parties at least, upon the retention of possession by the mechanic. Here appellee after the repairs were made parted with possession and returned the automobile to the conditional vendee.

A consideration of some cases involving the right of a mechanic in possession and claiming a common-law lien as against a conditional vendor and a prior mortgagee may be helpful in determining the question here involved.

In *Baughman Automobile Co.* v. *Emanuel* (1911), 137 Ga. 354, 73 S. W. 511, 38 L. R. A. (N. S.) 97, the mechanic having retained possession of the property repaired was attempting to enforce a common-law lien

against the conditional vendor who knew that the mechanic was making the repairs. The mechanic also had notice of the rights of the conditional vendor. It was held that the lien of the mechanic was subordinate to the right of the vendor. A like ruling was made in *Small* v. *Robinson* (1879), 69 Me. 425, 31 Am. Rep. 299.

While there is not complete harmony among the cases, the great weight of authority is to the effect that a like rule prevails as to a lien secured by a duly recorded chattel mortgage, and that such takes precedence over a mechanic's lien for repairs subsequently done at the purchaser's request. *Denison* v. *Shuler* (1882), 47 Mich. 598, 11 N. W. 402, 41 Am. Rep. 734; *Sargent* v. *Usher* (1875), 55 N. H. 287, 20 Am. Rep. 208; *Small* v. *Robinson, supra; Carrington* v. *Ward* (1877), 71 N. Y. 360.

The principle is believed to be universal, says Chief Justice Marshall, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant. *Rankin & Schatzell* v. *Scott* (1827), 12 Wheat. 177, 6 L. Ed. 593.

By a long line of decisions where a statute creates a lien, that lien, as contradistinguished from a common-law lien, is held not to take precedence of a prior contractual lien, where the creating statute does not clearly show or declare an intention to cause the statutory lien to override the earlier one. This is true even where the statutory lien arises for work done on, and to the betterment of, the property in question. *Wilson* v. *Donaldson* (1898), 121 Cal. 8, 53 Pac. 404, 43 L. R. A. 524, 66 Am. St. 17; *Adler* v. *Godfrey* (1913), 153 Wis. 186, 140 N. W. 1115; *Reeves & Co.* v. *Russell* (1914), 28 N. D. 265, 148 N. W. 654, L. R. A. 1915D 1149, and cases cited in annotation at page 1154; *Shaw* v. *Webb* (1914),

131 Tenn. 173, 174 S. W. 273, L. R. A. 1915D 1141, Ann. Cas. 1916A 626, and cases cited.

The authorities governing the right of a mechanic to a common-law lien as against a mortgage of personal property are conflicting. Thus in *Denison* v. *Shuler, supra,* it was held that such a lien attached only to the mortgagor's interest. Other cases uphold the priority of such a lien over the mortgagee's title, where it can be fairly implied that the mortgagee consented that the mortgagor might have the property repaired. In *Watts, Trustee,* v. *Sweeney* (1891), 127 Ind. 116, 26 N. E. 680, 22 Am. St. 615, it was held that a mechanic was entitled to foreclose such a lien as to the mortgagee of a locomotive, the mortgagor being a common carrier, and such locomotive being necessary in the operation of the carrier's business, and the repairs also being necessary. This was upon the theory that where such machinery was intrusted to the custody of a mortgagor for a long period of time, to be used by the mortgagor in the operation of a railroad, it would be presumed against the mortgagee that all necessary repairs were to be made, and in case of such necessary repairs the mortgagor was constituted the agent of the mortgagee in having such repairs made. The court after having held that the mortgagee was presumed to have contracted with a knowledge of the law giving to a mechanic a lien, said, "Where the lien is purely a statutory one, or where the property is of such a character that it would not be reasonable to anticipate the necessity for any needed repairs for the period of time the property is to or does remain in the possession of the mortgagor, or when it is but reasonable to expect the mortgagor in person to care for or repair the property, in such cases a different rule may prevail."

But in *Hanch* v. *Ripley* (1891), 127 Ind. 151, 26 N. E. 70, 11 L. R. A. 61, it was held that the statutory lien

of an agister for feeding horses was not superior to the lien of a chattel mortgage, the court saying, "As the agister's lien depends alone upon the statute, it can have no greater force than the statute gives it, and as the Legislature has, as we have said, manifested no intention of giving to it superiority over other liens, it can have none."

In *Davis* v. *Elliott* (1893), 7 Ind. App. 246, 34 N. E. 591, it was held that when labor was done and materials were furnished on buildings, for one in possession of real estate under an executory contract of conveyance, the right of the materialman to a mechanic's lien did not exist where there was a forfeiture of the executory contract.

In *Woodard* v. *Myers* (1896), 15 Ind. App. 42, 43 N. E. 573, where a colt was placed with an agister by the mortgagor with the knowledge and consent of the mortgagee after the debt secured by the mortgage became due, and where the feed and care of the colt were necessary for the preservation of its life, the court held the lien was superior to the lien of the mortgage. But the court announced the general rule to be that the lien of a chattel mortgage duly recorded, is paramount to that of an agister for subsequent pasturing the mortgaged stock, unless it be shown that the mortgagee consented, expressly or impliedly that such stock might be so pastured and subjected to such lien. "This rule," said the court, "is especially applicable where the lien for agisting is created before the maturity of the mortgage debt." To the same effect see *McGhee* v. *Edwards* (1889), 87 Tenn. 506, 113 S. W. 316, 3 L. R. A. 654; *Easter* v. *Goyne* (1888), 51 Ark. 222, 11 S. W. 212.

The same rule applies to other chattels. *Adler* v. *Godfrey* (1913), 153 Wis. 186, 140 N. W. 1115; *Presque Isle Sack, etc., Co.* v. *Reichel* (1913), 179 Mich. 466, 146

N. W. 231. In *Shaw* v. *Webb, supra,* it was held that a statutory lien on an automobile for repairs thereto made at the request of a conditional buyer, is subordinate to the claim of the conditional seller, unless the sale contract confers on the buyer the right to have repairs made. The court there recognized the rule as announced by the Supreme Court of this state in *Watts, Trustee,* v. *Sweeney, supra,* that such consent may be implied from the nature of the transaction or from the circumstances, and in support of such rule says, "Doubtless a court, in order to sustain a claim to lien, would not hesitate to seize upon any provision in a contract retaining title or in a mortgage which may be construed to look to the making of repairs or improvements at the instance of the vendee or mortgagor in possession."

The mere fact that the automobile in the instant case needed repairs in order that the vendee might continue to use it, is not sufficient to give appellee a priority over the title of appellant. The intent of the vendors, however, to permit and authorize *necessary* repairs to be made by the conditional vendor appears in the contract itself.

Appellant insists that under the rule laid down in *Baldwin, etc., Works* v. *Edward Hines Lumber Co.* (1919), 189 Ind. 189, 125 N. E. 400, 13 A. L. R. 1059, where it was held that a materialman was not entitled to a lien where there was a positive covenant in the contract between a land owner and a building contractor to the effect that no contractor, materialman or laborer should have any right to a mechanic's lien against the property. In that case the materialman knew he was dealing, not with the owner of the property, but with one whose rights and powers were governed and controlled by a contract with the owner. He knew that the only right the contractor had

to buy material and hold a lien on the real estate was given by a contract. He was required to take notice of the fact that the public records showed the locomotive works was the owner of the real estate.

While the contract between the Wymans and Bedwell recognized the right of the latter to have accessories attached to the automobile and required him to make any and all repairs thereon necessary to keep the property in good, first class condition, it also provided that he should keep the machine free from all liens and encumbrances and that if he failed to keep or perform any of the conditions required of him, or if he attempted to encumber the property, the vendors or their as signs had the right to the immediate possession; that the whole amount of the purchase price should then become due and payable, and if after notice Bedwell failed to pay the balance of the purchase price and all costs and expenses incurred in securing possession of the automobile, the right of Bedwell in and to the property ceased and the amount already paid on the purchase price was forfeited as liquidated damages. A careful reading of this contract clearly shows that it was the understanding of the parties that whatever repairs were made on the automobile were to be made by the conditional vendee at his own expense, and any attempt on the part of Bedwell to encumber the property gave appellant the right of possession.

We are not here dealing with a case where a mechanic has made necessary repairs on a chattel and where an attempt is being made to enforce a common-law lien. We are dealing with a case where no claim is made that the repairs were necessary and where appellee claims to have a lien by virtue of a statute which makes no provision concerning the priority of such lien.

In order to justify the court in foreclosing a lien in favor of appellee the burden was on appellee to allege

and prove that the repairs were necessary to keep the property in good, first class condition and that they were made with the *consent* of appellant. It must not only appear that the repairs were necessary, but it must also appear that Bedwell was the agent of appellant in having such repairs made.

When appellant was permitted to intervene and defend appellee should have amended his complaint so as to have connected appellant with the transaction, but having failed to do so, and appellant having filed answers, the defect in the complaint could have been overcome by a reply.

In *Partlow, etc., Car Co.* v. *Stratton* (1919), 71 Ind. App. 122, 124 N. E. 470, the court in discussing whether a mechanic's statutory lien was superior to the rights of a conditional vendor, said: "It is well settled in this state that, where the owner of personal property sells and delivers it to a purchaser not for the purpose of consumption or resale, at an agreed price payable at a future day, upon the express condition and agreement that the title to such property shall remain in the vendor thereof until the purchase price is fully paid, the vendee of such property, prior to such payment, can neither sell nor incumber the property in such manner as to defeat the title of the original owner and vendor thereof. *Cable Co.* v. *McElhoe* (1915), 58 Ind. App. 637, 108 N. E. 790. It follows that, unless the evidence shows that said Fitch had either express or implied authority from appellant to contract for said storage, supplies and repairs, appellant's rights as conditional vendor are superior to said lien of appellee. It is not claimed that the evidence shows that said Fitch had any express authority in that regard, and there is no just ground for any such claim. It has been held in this state that, where property is to be retained and used by the mortgagor for a long period of time, it will be

presumed to have been the intention of the parties to the mortgage, where it is property liable to such repairs, that it is to be kept in repair, and when the property is machinery, or property of a character which renders it necessary to intrust it to a mechanic or machinist to make such repairs, the mortgagor in possession will be constituted the agent of the mortgagee to procure the repairs to be made, and, as such necessary repairs are for the betterment of the property, and add to its value to the gain of the mortgagee, the common-law lien in favor of the mechanic for the value of the repairs is paramount and superior to the lien of the mortgagee. The mortgagee is presumed in such case to have contracted with a knowledge of the law giving to a mechanic a lien. But where the lien is purely statutory, or where the property is of such a character that it would not be reasonable to anticipate the necessity for any needed repairs for the period of the time the property is to or does remain in the possession of the mortgagor, or when it is but reasonable to expect the mortgagor in person to care for or repair the property, in such cases a different rule may prevail. *Watts, Trustee,* v. *Sweeney, supra.* The same rule would apply where the rights involved are those of a conditional vendor instead of a mortgagee."

The court without deciding whether the mechanic had any right to a statutory lien as against the conditional vendor for any of the repairs, reversed the cause on the theory that the mechanic had no lien for gasoline furnished the conditional vendee and used by him in operating the truck.

In *Hopkins* v. *Hudson* (1886), 107 Ind. 191, 8 N. E. 91, appellants were the owners of a coal mine which they had leased to one Poor for whom appellee had performed labor in operating the mine. Appellees filed their complaint against Poor and the owners of the mine to re-

cover on accounts due them from Poor and to enforce a statutory lien against the property which had been leased to Poor. In holding that the lien imposed by statute in favor of those working in and about the mine must be understood as applying to such interest as the person operating the mine had therein, the court said: "The power to create a lien or charge upon property implies that the person whose contract, or dealings in reference thereto, subject it to the lien, has some right in or authority, express or implied, over the property, which enables him to bind it to the extent of his own interest, or authorizes him to do such acts as will bring the interest of the owner under a lien which the law imposes. * * * The lien must be founded 'on contract with the owner, either directly or indirectly; for it is only thus that one man can ever acquire a claim upon the property of another.' * * * No analogy can be maintained between the case of a contractor who is supposed to possess implied authority to bind the property of the owner, to the extent of subjecting it to a lien imposed by law in favor of sub-contractors and materialmen, and that of a tenant or lessee who has no such authority. In the one case the relation warrants the inference of authority. In the other no authority is implied. The extent of the power or authority of the lessee is to bind such interest, and such only, as he possesses in the property. Unless an actual agency is established, the interest of the lessee alone is chargeable."

In *Cable Co.* v. *McElhoe, supra,* appellant had given one Delmar a conditional contract for sale of a piano who without having paid the purchase price in full, gave a mortgage on the piano to McDermond who took possession of it under the terms of the mortgage, and who thereafter sold it to McElhoe. It was there held that under such a contract the payment

of the purchase price was a condition precedent to the vesting of title in the vendee, and that the vendee prior to payment could neither sell nor encumber the property in such a manner as to defeat the title of the original owner and vendor. To the same effect, see *Winchester, etc., Mfg. Co.* v. *Carman* (1887), 109 Ind. 31, 9 N. E. 707, 58 Am. Rep. 362; *West* v. *Fulling* (1905), 36 Ind. App. 617, 76 N. E. 325.

Necessary repairs are for the betterment of the property and under the circumstances in the instant case, where the contract expressly provides that the 3. conditional vendee shall make all repairs necessary to keep the property in first class condition, the vendee in causing such repairs to be made might well be held to be the agent of the vendors in causing necessary repairs to be made. *Weber Implement & Auto. Co.* v. *Pearson* (1917), 132 Ark. 101, 200 S. W. 273, L. R. A. 1918D 327. But where the statutory lien is for work or materials not necessary for the preservation of the property and not authorized by the vendor, and the statute is silent on the question, the lien does not take priority over the lien or right of the conditional vendor. *Eccles, Artesian Well Supervisor,* v. *Will* (1918), 23 N. M. 623, 170 Pac. 748, L. R. A. 1918C 1022.

We hold that appellee had the burden of establishing that the repairs made by him were necessary in order to keep the property in first class condition and 2. that Bedwell in causing them did so as the agent of the conditional vendors. The answers were therefore sufficient to withstand demurrers and to require appellee to reply. The cause is therefore reversed with directions to overrule the demurrer to each paragraph of answer, with leave to the parties to amend their pleadings and for further proceedings consistent with this opinion.