### JOSEPH ALLGAIR v. JONATHAN M. BLEW ET AL.

Submitted July 5, 1911—Decided November 21, 1911.

The oath by which complainants are required to verify a complaint made under section 3 of the Bishops law amending section 10 of the Werts act (*Pamph. L.* 1906, *p.* 201), must be based upon the personal knowledge of the affiants, which, if challenged *in limine* by an offer to prove by legal evidence that they did not possess such knowledge, presented an issue to be heard and determined by the statutory tribunal upon the question of its own jurisdiction; and the overruling of such an offer, by which such lack of personal knowledge was provisionally established, rendered nugatory a subsequent order for the revocation of a license as an order made by a body upon whom jurisdiction had not been conferred in the manner prescribed by the statute.

---

On *certiorari*.

Before Justices GARRISON, TRENCHARD and KALISCH.

For the prosecutor, *John A. Coan* and *George S. Silzer*.

For the defendants, *John Boyd Avis*.

The opinion of the court was delivered by

GARRISON, J. This writ of *certiorari* brings up the order of the Middlesex Pleas revoking the prosecutor's license to keep an inn and tavern.

The principal ground on which the prosecutor bases his right to have the final order of the Pleas set aside is that the complaint on which the initial rule to show cause against him was issued did not confer upon the Pleas jurisdiction to hear and determine whether his license should be revoked for the reason that the complainants by whose affidavit the matters and things contained in the complaint were verified had no personal knowledge whether they were true or false. The contention of the prosecutor is that the lack of personal knowledge in the affiants rendered them incapable of taking an affidavit that would constitute the "verification upon oath" of their complaint under the tenth section of the Werts act (*Pamph. L.* 1899, *p.* 77), as amended by the Bishops law (*Pamph. L.* 1906, *p.* 199). It is further contended by the prosecutor that when, upon a direct challenge of jurisdiction in this respect, the Pleas overruled his offer to prove that the complainants had no personal knowledge of the matters specified in their complaint, the fact that they had no personal knowledge was established for the purposes of such challenge, and hence that the court, if the prosecutor was right as to his legal proposition, proceeded without having acquired jurisdiction under the statutes referred to.

In the determination of the correctness of these legal propositions the first inquiry is: What must the statutory complaint and affidavit show in order to vest jurisdiction?

By a reference to the statutes cited it will appear that, in addition to a specification of the illegal acts said to have been committed by the holder of a license, there are two other requirements, one required by the express terms of the statute, the other by its imperative implications. The express requirement is that the persons who make and verify the complaint shall be residents of the township or municipality in which the license was used; the other requirement is that the commission of the illegal acts specified in the complaint shall be verified upon the personal knowledge of the complainants which is imperatively implied from the fact that the complaint in which such acts are specified shall be "verified by the oath

of the complainant." Verification by oath in such a context means "proof," *i. e.,* evidence based on personal knowledge, and anything that falls short of this falls short of being proof as much in this proceeding as it would in a court of law.

This is established by the cases cited in the brief of counsel for the prosecutor: *Westfall* v. *Dunning,* 21 *Vroom* 461; *Johnson* v. *Allen,* 26 *Id.* 401; *Voight* v. *Board of Excise,* 30 *Id.* 358.

This being so, it follows that where affiants do not, on the face of their affidavit, state that it is made on belief merely or on information and belief they in legal effect aver that it is made upon knowledge. If this be not so, the failure to state in the affidavit that it was made upon knowledge would render such affidavit nugatory in every proceeding where verification by oath was required. Where nothing is stated in the affidavit, from which the capacity of the affiant to verify its contents can be gathered, one of two courses is open, either to discard such affidavit for failure to show the capacity to make it or to assume in favor of its validity that such capacity exists, and is, in effect, averred to exist. The latter, which is the course generally pursued, carries with it the right to rebut such tacit averment as fully as if it had been expressly made. If this position in favor of the verification of the affidavit be not taken, the only alternative is to deny its validity upon its own showing.

In the present case, therefore, the view most favorable to the validity of the affidavit is that it avers not only that the complainants are residents of the locality, but that, as affiants, they have personal knowledge of the specific violations of the law which they are required to verify by their oaths.

It was, in part, at least, to this end that the legislature confined the right to make and verify the complaint to persons resident in the vicinity where the license was used, *i. e.,* to persons who presumably would have personal knowledge of violations of the law, or, at least, would have both the opportunity and the incentive to acquire such knowledge. The double legislative purpose disclosed by this provision is, first,

that holders of licenses shall not be open to attack by persons from all over the state, or, perhaps, from other states, but only by persons immediately affected; this concerns the makers of the complaint *qua* complainants; the other purpose is that the authority of the license-granting body shall not be invoked by persons who, having both the incentive and the opportunity to acquire actual knowledge that alone would be of aid in such an investigation, have not seen fit to do so; this concerns the complainants *qua* affiants.

Having this latter purpose in mind, it is incredible that the legislature provided or intended that the oath by which the facts essential to jurisdiction were to be verified should be the oath of persons who had no knowledge as to the verity or ·falsity of·such facts. The required oath was intended by its terms to verify, *i. e.,* "to prove to be true," "to establish the truth of" (Webster's New International Dictionary). It would be fatuous in the extreme for the legislature, with this object in view, to provide for the making of an oath that could by no possibility verify or possess any element of verification.

Statutory jurisdiction must be acquired in the manner prescribed by the legislature or it does not exist at all. Under the statute now before us the Pleas could no more absolve the complainants as affiants from the possession of the knowledge requisite to make them such than it could· absolve them as complainants from the possession of the domicile requisite to make them residents of the township or municipality.

Taking therefore the complaint and affidavit in the present case as averring that the complainants had personal knowledge of the commission of the illegal acts specified and sworn to by them, the question whether such averment was, in fact true or whether it was false, and the court through ignorance or design was being imposed upon, became as much a topic for preliminary determination, upon the question of jurisdiction, as the fact of the residence of the complainants would have been, if challenged *in limine,* as a ground why the court should not assume jurisdiction.

In point of fact, while the latter was not challenged, the former was by a direct offer to prove, by the testimony of witnesses, and by calling the complainants themselves, that they did not possess any personal knowledge of the facts, the verification of which by their oath was essential to the jurisdiction of the Pleas.

Upon this branch of the case, therefore, our conclusion is that the legal propositions of the prosecutor upon the question of jurisdiction were entirely sound.

If the Pleas, with this proposition and proffer of testimony before it, had heard the witnesses and decided, upon the evidence, in favor of its own jurisdiction, a different question would be presented. By refusing, however, to hear the proffered testimony, the fact that the complainants did not have the personal knowledge required for the verification of their complaint was, upon familiar principles, established for the purposes of the court's action upon the question of its jurisdiction; and the assumption of jurisdiction, in view of such established fact, must rest either upon the ground that jurisdiction was conferred by the merely formal presentation of an affidavit that was admittedly untrue, or else upon the ground that jurisdiction could be taken upon the strength of allegations that in legal effect were not verified by the oath of anyone, neither of which propositions has any semblance of soundness.

The right and duty of a court or of a tribunal, that upon the proof of certain facts may assume jurisdiction, to determine, as a preliminary matter, the question of its own jurisdiction, is universally established. 11 *Cyc.* 700.

"The proof," said Vice Chancellor Van Fleet, in *Atlantic Trust Co.* v. *Consolidated, &c., Co.,* 4 *Dick. Ch. Rep.* 402, 406, "in support of a jurisdictional fact, must always be clear and convincing, for the court derives its power from the fact, and hence, until the fact is shown to exist, it has no power." Jurisdiction, in fine, in such cases, rests upon the proof of facts, not upon a mere matter of form.

The opinion of Chancellor Magie, in the case of *Park Ridge* v. *Reynolds,* 45 *Vroom* 449, carries this duty of inquiry as to the truth of jurisdictional facts even further than is necessary for the purposes of the present case. In that case the Supreme Court had held that the justice to whom the jurisdictional petition of twenty-five freeholders was presented was not obliged to try and determine the issue raised by the denial of the truth of the facts stated, viz., that the petitioners were freeholders. 44 *Id.* 116.

The Court of Errors and Appeals in affirming this judgment upon another ground took occasion to say in the opinion above cited: "We are unable to approve the view that the Supreme Court justice who has directed the investigation may not be required to institute an inquiry into the truth of the affidavit upon which his jurisdiction has been invoked, at least to the extent of discovering whether he has been imposed upon." If the truth of facts duly verified by the oaths of persons possessing personal knowledge is, when challenged, a proper subject of preliminary determination upon the question of jurisdiction, it follows, *a fortiori,* that the possession of the personal knowledge essential to the making of the jurisdictional affidavit is likewise a proper subject for such determination.

In the present case, as already pointed out, the facts upon which jurisdiction was challenged were established by the overruling of the offer to prove them, and it is this, among other things, that distinguishes the present case from that of *Davis* v. *Repp,* 50 *Vroom* 394, in which, as will be seen by the state of the case, there was no offer of testimony to prove that the affiants did not possess personal knowledge, but merely a request for permission to cross-examine the complainants who had not been called or examined as witnesses. The denial of such a request can be supported on several grounds, and had no tendency to establish the facts that raise the jurisdictional question we are called upon to determine.

The conclusion to which the foregoing considerations lead us, is that the order revoking the prosecutor's license was

nugatory because the Pleas had not lawfully acquired the jurisdiction to hear and determine the controversy.

Having thus concluded that the Pleas was without *generic* jurisdiction over the controversy, it is unnecessary to consider the other reasons which deal with the lack of *specific* jurisdiction to make the order of revocation because of alleged errors committed in the course of the proceeding. *Attorney-General* v. *Sooy Oyster Co.,* 49 *Vroom* 394, 397.

The order of the Middlesex Pleas revoking the license of the prosecutor is set aside and for nothing holden.