JAMES ROBERT JOHNSON *v.* STATE OF INDIANA.

[No. 270S23. Filed February 22, 1972. Rehearing denied April 7, 1972.]

*Gil I. Berry, Jr.,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of first degree burglary in a trial to the court and was sentenced to imprisonment for not less than ten nor more than twenty years and disfranchised. The alleged errors complained of relate to the sufficiency of the evidence and the identification procedures employed, which procedures the defendant contends were suggestive, tainted and not subject to cross examination. We shall review these questions in inverse order.

Mrs. Overbay, a resident of the burglarized premises, observed the defendant leave her residence, run past her, get into his car and, after some difficulty in starting it, drive away. She stood a few feet from him for from one to two minutes while this action took place. A few days later, she attended a preliminary hearing, where the defendant and other accused persons were present in court under police restraint. They were of varied sizes, and some were white and some black. Some had on regular street clothes and some, including the defendant were in jail uniforms. Prior to identifying the defendant in this group, Mrs. Overbay was shown photographs of the defendant, showing him with a mustache; and she declined to identify him from such photographs, because the man she saw at the scene of the crime had no mustache, and she commented that such photographs did not look like the man in question. After having viewed the photographs, however, Mrs. Overbay identified the defendant, when he walked into the courtroom. At the trial, she identified him on direct examination; and on cross examination she testified as related above concerning the identification at the preliminary hearing.

Miss Mertz, a witness for the prosecution, lived next door to the Overbays. She was present when the defendant ran past Mrs. Overbay and drove away in his automobile and observed him for a minute or more. On direct examination at the trial she identified him and further testified that she had seen him at the aforementioned preliminary hearing.

It was Defendant's position in his motion for a new trial that the identifications of him by Mrs. Overbay and Miss Mertz at the pre-trial hearing, being without notice and right to counsel, were violative of his 6th Amendment rights under the doctrines of *United States* v. *Wade* (1967), 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, *Gilbert* v. *California* (1967), 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 and *Stovall* v. *Denno* (1967), 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199.

At the outset, it can be conceded that the confrontations of Defendant by Mrs. Overbay and Miss Mertz, being without notice and benefit of counsel fell squarely within the proscriptions of *Wade (supra)* and *Gilbert (supra)*. Error, standing alone, however, does not compel reversal. It must also be shown that the complaining party was harmed by such error. *Layton* v. *State* (1968), 251 Ind. 205 240 N. E. 2d 489; *Coppenhaver* v. *State* (1903), 160 Ind. 540, 544, 67 N. E. 453; that he took the available procedural steps to protect himself against such error. *Sams* v. *State* (1969), 251 Ind. 571, 574, 243 N. E. 2d 879; *Hensley* v. *State* (1969), 251 Ind. 633, 244 N. E. 2d 225; *Lewis* v. *State* (1969), 252 Ind. 454, 460, 250 N. E. 2d 358; *Tyler* v. *State* (1968), 250 Ind. 419, 236 N. E. 2d 815. It, therefore, appears that where a questionable out-of-court identification has been had, defense counsel should take prompt steps to assure that it not be utilized in evidence at the trial and that other evidence has not "been come at by exploitation of that illegality" (*Wong Sun* v. *United States,* 371 U. S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 441). Better practice dictates that the questions be presented and

determined at a pre-trial hearing upon a motion to suppress. Absent prior knowledge of an out-of-court identification, the matter could be gone into by preliminary questioning, out of the presence of the jury, at the time the in-court identification testimony is tendered. The question not having arisen by either of the foregoing methods, the defendant, at best, runs the risk of having the trier of the facts subjected to questionable testimony unnecessarily and a subsequent determination of whether it was error or prejudicial. The disadvantages inherent in awaiting the cross examination stages to raise the question are self evident. Although not in issue here, we can perceive circumstances that might compel us to hold that prior opportunity to raise the question having not been availed of, an objection to the identification or motion to strike came too late. In the *Wade* case *(supra)* the taint of the in-court identification by the suspect pre-trial identification was exposed through cross examination and a subsequent motion for a judgment or acquittal or, alternatively, to strike the courtroom identifications. Conceding, for the purpose of this analysis, that this motion was available to Defendant, it was not forthcoming. The question in issue is one of admissibility of evidence. It was first brought to the court's attention by Defendant by his motion to dismiss at the close of the State's evidence and came too late. To be available on review, an objection must have been timely made. *American Carloading Corp.* v. *Gary Trust & Savings Bank, Administrator* (1940), 216 Ind. 649, 661, 25 N. E. 2d 777; *Musser* v. *State* (1901), 157 Ind. 423, 431, 61 N. E. 1; I.L.E. *Appeals* § 92. Usually, this necessitates that the objection be made at the earliest opportunity. C.J.S. *Appeal and Error* § 246. If there was no opportunity to object before the objectionable matter came into evidence, the remedy is by way of a motion to strike. *Deming Hotel Company* v. *Prox* (1968), 142 Ind. App. 603, 615, 236 N. E. 2d 613.

If we were to regard the defendant's motion to dismiss as a timely alternative motion to strike, the motion, nevertheless,

was properly overruled. The *Stovall* case *(supra)* cited in argument by Defendant's counsel to the trial court has no application here. To the extent that they are here applicable, the *Wade* and *Gilbert* cases *(supra)* also cited in argument by counsel, determined:

(1) A pre-trial identification confrontation is a critical stage of the prosecution and one at which the defendant is entitled to the benefits of the 6th Amendment right to counsel.

(2) Absent a proper waiver, the state is barred at the trial from presenting evidence of such confrontation if held in the absence of counsel. It is per se inadmissible.

(3) Evidence, which may be the fruit of or buttressed by such a confrontation, will be held to be inadmissible, where evidence of such confrontation is brought in by the prosecution, the per se exclusionary rule being the only "effective sanction to assure that law enforcement authorities will respect the accused's constitutional rights to the presence of his counsel at the critical line up." *(Gilbert v. California, supra)*.

(4) However, where the in-court identification is challenged as having been subjected to the improper influence of an unlawful confrontation, the occurrence of which has been brought to light by the defendant, the prosecution will be given the opportunity, and must carry the corresponding burden, to establish by clear and convincing evidence, that the in-court identification was free of taint from the illegal one. The application of these rules will compel law enforcement authorities to exercise all due care to assure the opportunity of the presence of counsel at out-of-court identification confrontations but will, nevertheless, avert the loss to the state of valid identification testimony in those rare cases where the witness may have been erroneously subjected to the improper influence, unless the state commits the additional error of capitalizing upon that influence.

Applying these rules, we must admit the illegality of the

out-of-court confrontation and would apply the per se exclusionary rule as to it and its fruits. But it is clear from the record that the in-court identification by Mrs. Overbay was not tainted by the illegal confrontation but had an independent origin. She witnessed the defendant come out her front door and run right by her. He got into his car but had difficulty starting it. She stood approximately ten feet from him and talked to him for a period of from one to two minutes. She made mental note that he was almost the exact size as her husband, that his nose was prominent and snubbed and that he had no mustache or beard. Just prior to the out-of-court confrontation, she declined to identify Defendant from photographs, because she was not sure. Her in-court identification was made but slightly more than two months after she observed Defendant at the scene and time of the crime, and none of her testimony was impeached or discredited at the trial. In the *Wade* case *(supra)* the court determined that the record did not reveal enough to determine if the in-court identification had an independent origin, and it therefore reversed and remanded the case to the district court to determine that issue. Here, following the guidelines laid down for us in *Wade (supra)*, it is clear from the record that the in-court identification testimony of Mrs. Overbay did have a sufficient independent origin and was free of taint. We agree, as stated by the court in *United States* v. *Wade (supra)* that such a determination is most properly made in the trial court. This can be done, however, only if the question is there properly presented; and where, as here, such question was not presented to the trial court and the record is sufficient to enable us to make a proper determination, we can and will do so.

Miss Mertz attended the out-of-court identification confrontation, but it does not appear that she participated therein. She acknowledged, on direct examination, that she saw the defendant in custody on that occasion. We note, in passing, that our observations with reference to Mrs. Overbay's

identifications would apply as well to those of Miss Mertz. Again, no objection was made to her in-court identification until the motion to dismiss. Further, no question has been presented by Defendant's brief with respect to the identifications by Miss Mertz, and any question in that regard has been clearly waived.

Having concluded that the question of the State's witnesses' identification of the defendant is not available to him there is no insufficiency of evidence upon such point. He has also presented under this alleged error, however, a variance between the allegation of the affidavit and the proof, in that the affidavit refers to the dwelling house of "Arthur Overbay" as having been burglarized, whereas the evidence shows it to have been that of "Arthur Overbay, Jr." We do not regard this as a material variance. This Court has decided numerous cases with reference to minor variances between the name alleged and that proved. In most such cases it has had so little regard for the genuineness of the issue, that the matter has been disposed of with little or no supporting reasoning. In *Allen* v. *State* (1876), 52 Ind. 486, the offense charged was giving liquor to "Robert McNeal, Jr.," and the proof was that it was given to "Robert McNeal." This Court said: "The objection is untenable. The addition of 'senior' or 'junior' to a man is a mere matter of description, and forms no part of the name." In *Miller* v. *State* (1879), 69 Ind. 284, the indictment charged the stealing of property belonging to "Orange Brookshire," and the proof showed the name of the owner to be "Orange S. Brookshire," or "Orange Scott Brookshire." This Court merely stated that the variance was not material and cited among others, the case of *Choen* v. *State* (1876), 52 Ind. 347, wherein the defendant was charged with assault and battery upon "George W. Shott," while the evidence was of such assault and battery upon "George Shott." The defendant, on appeal, insisted that the variance was fatal. This Court said:

"We recognize the rule that where matters of description are alleged, though unnecessarily, they must be proved. *Wertz v. The State*, 42 Ind. 161. But a majority of the court are of opinion that the rule has no application to such case. The law, in the opinion of a majority of the court, knows but one Christian name, and where one Christian name is stated, and also the initial letter of another Christian name, as in this case, the initial letter may be rejected as surplussage, and need not be proved. * * * if the law knows but one Christian name, and that is properly stated, the initial letter or letters, standing for other Christian names, of which the law takes no cognizance, if inserted, may be regarded as surplusage, and it will be sufficient to prove the Chrisian name as stated, with the surname." 52 Ind. at 348-49.

In *Geraghty v. State* (1887), 110 Ind. 103, 11 N. E. 1, we said:

"* * * the addition of the word 'senior' or 'junior' to the name of a person referred to in an indictment is a mere matter of description, constituting no part of the name, and need not be proved where proof of the name is necessary." 110 Ind. at 104-5.

In later cases, this Court set forth the full and very logical reason for the aforementioned holdings. *Kruger v. State* (1893), 135 Ind. 573, 35 N. E. 1019; *Acton v. State* (1930), 201 Ind. 686, 171 N. E. 197; *Gears v. State* (1931), 203 Ind. 3, 176 N. E. 553. In the *Gears* case, *supra,* this Court stated the rule in a quote from 1 Wharton's Criminal Evidence 10th Ed. § 95:

"A text-writer has very properly said: 'The modern rule is that a variance in names is not now regarded as material, unless it appears to the court that the jury was misled by it, or some substantial injury is done to the accused, such as that, by reason thereof, he was unable intelligently to make his defense, or he was exposed to the danger of a second trial on the same charge." 203 Ind. at 8.

We have recently applied the rule, although not in respect to names, in *Boyd v. State* (1971), 256 Ind. 22, 266 N. E. 2d

802, and *Darnell* v. *State* (1971), 257 Ind. 613, 277 N. E. 2d 366.

It is very clear that the variance complained of in the case before us could not have misled the defense, and it is equally clear that this conviction will forever remain a complete bar to another prosecution of the defendant for the same burglary. There has been no tendency to prejudice the substantial rights of the defendant by the imperfection complained of, and hence it is not available as reversible error. Acts 1905, ch. 169, § 192, 1956 Repl. Burns Ind. Stat. Ann. § 9-1127, I.C. 31-1-23-26; Acts 1905, ch. 169, § 334, 1956 Repl. Burns Ind. Stat. Ann. § 9-2320, I.C. 35-1-47-9; *Callahan* v. *State* (1964), 246 Ind. 65, 201 N. E. 2d 338.

The charge of insufficiency of the evidence by the defendant related only to his identification and to the above discussed variance. We, therefore, deem it unnecessary to relate all of the evidence favorable to the State and the inferences logically and reasonably to be drawn therefrom.

Finding no error, the judgment of the trial court is affirmed.

Arterburn, C.J., and DeBruler, Givan and Hunter, JJ., concur.

NOTE.—Reported in 278 N. E. 2d 577.