## ARTHUR EUGENE LINDSEY *v*. STATE OF INDIANA.

[No. 1072S141. Filed February 13, 1976.]

*Harriette Bailey Conn*, Public Defender of Indiana, *Stephen Brown*, Deputy Public Defender, for appellant.

*Theodore L. Sendak*, Attorney General, *John D. Shuman*, Deputy Attorney General, for appellee.

ARTERBURN, J.—In the late evening hours of November 14, 1964, Julia Zink, a twenty-one year old woman, disappeared

from her rural residence in Posey County, Indiana. An investigation by the Posey County Sheriff's Department and the Indiana State Police was begun the following morning.

Witnesses interviewed by police stated that an automobile with a description matching that of the car of the Appellant had been seen near the Zink residence on the night of the disappearance. The Appellant was taken into custody on the afternoon of November 15, 1964. The circumstances surrounding the Appellant's subsequent interrogation are in issue.

The record reveals that the Appellant, without objection, went with a police officer to the County Sheriff's office. While traveling there he made first mention of the murder by asking, "Have you found the body of the missing person yet?" Upon his arrival at the sheriff's office, he was asked preliminary questions and was told that his car had been observed near the scene. He was told that he did not have to answer any questions and was told that he had a right to an attorney. These warnings were given on three separate occasions before the Appellant confessed.

The Appellant first stated that he went directly home after dropping off a babysitter at about 11:30 p.m. on the evening of the crime. He later admitted that he did not arrive home until 2:00 a.m. At one point of the interrogation the Appellant was asked to remove some of his clothing. About forty or forty-five minutes after the interrogation had begun the Appellant was asked two or three times what he had done with the victim's body. He admitted murdering Mrs. Zink, admitted sexually assaulting her before the murder, and described the place in which the victim's body could be found.

The Appellant was then put under arrest. At approximately 6:00 p.m. that evening the Appellant was taken to the area on the Ohio River described by him as the place in which the body was deposited. The Appellant pointed to a spot on the river. The corpse of Mrs. Zink was later recovered from that area.

The Appellant was indicted by the Posey County Grand Jury for first degree murder and first degree murder in the perpetration of rape. On March 25, 1965, the Appellant was convicted on both counts. Judgment was entered on the jury's verdict on March 29, 1965, and the Appellant was sentenced to life imprisonment for each count. An Amended Motion for New Trial was overruled on October 14, 1969, and the Appellant now presents this belated appeal pursuant to permission granted by this court on January 9, 1973.

## I.

The Appellant's primary contention is that the trial court erred in admitting into evidence statements resulting from his interrogation and by admitting into evidence testimony and exhibits which were the fruit of those statements. The Appellant's trial was conducted prior to *Miranda* v. *Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and the procedural guidelines which that case imposed. Because that decision was held not to be retroactive in *Johnson* v. *New Jersey,* (1966) 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, we need not consider the application of the *Miranda* safeguards. We must consider, however, the guidelines established in *Escobedo* v. *Illinois,* (1964) 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. We must also consider whether under the totality of the circumstances the Appellant's statements were the product of police coercion and were involuntary.

The Appellant did not object at trial to the admission into evidence of the statements which resulted from his interrogation on the basis that they were coerced or involuntary. His Motion to Suppress Evidence concerned physical evidence obtained after a search of his home and automobile. The first time objection was made that these statements were not freely and voluntarily given was in the Appellant's Amended Motion for New Trial some four years after the conclusion of the trial.

This court has clearly stated that objections at trial are

necessary to preserve issues for appeal. *Johnson* v. *State,* (1972) 257 Ind. 682, 278 N.E.2d 577. We have similarly held that a motion to correct errors must be written with sufficient specificity to inform the trial court of the precise error being alleged. *Finch* v. *State,* (1975) 264 Ind. 48, 338 N.E.2d 629. This should end this issue in this case. A defendant should not be permitted to raise issues for the first time on appeal and try them before this court. If the rule were otherwise there would be little reason to have trial courts. However, with this warning, and because of the severity of the offense here, we will review this issue. We stress that this court is under no obligation to do so.

Because no objection on the grounds of voluntariness was made at trial, we are presented with no finding by the trial court on that issue. The record contains the testimony of the Appellant and his interrogators regarding the interrogation at issue. The testimony of the three officers who interrogated the Appellant was that the Appellant was advised of his right to remain silent and his right to an attorney on three separate occasions before the confession was made. The interrogation lasted for only forty or forty-five minutes. The Appellant was at no time threatened.

The Appellant stresses that he was told to disrobe during the interrogation. The police officers state he was asked to partially do so, that it was done for only a couple of minutes, and that they at that time looked for cuts and bruises. Today the rule fixed by a majority of this court places the burden on the state to prove to the trial judge, beyond a reasonable doubt, that a proffered confession is admissible. *Magley* v. *State,* (1975) 263 Ind. 618, 335 N.E.2d 811. A minority of this court has felt that the "beyond a reasonable doubt" standard is misplaced here, since it is admissibility of evidence and not guilt or innocence that is being determined by the trial judge. In any event, the reasonable doubt standard did not prevail when the Appellant was

tried. At that time a confession offered into evidence was *prima facie* admissible. The State was required to establish "to the satisfaction of the Court" that a confession was rendered freely and voluntarily after objection was made by a defendant. *Smith* v. *State*, (1969) 252 Ind. 425, 249 N.E.2d 493; *Gennaitte* v. *State*, (1963) 243 Ind. 532, 188 N.E.2d 412.

It is clear that by the law that prevailed at the time of the Appellant's trial an objection was required if voluntariness of a confession was to be at issue. Moreover, we are of the opinion that, under the totality of the circumstances revealed in the record, the Appellant's confession was voluntary. The conclusion is reached under both standards of proof discussed above.

Objection was made at trial on the basis of *Escobedo* v. *Illinois, supra*. The Appellant testified at a hearing on his Motion to Suppress Evidence that he requested assistance of counsel some fifteen minutes after his arrival at the Sheriff's office. This was denied by the three officers involved in the interrogation. Those officers stated affirmatively that they told the Appellant he was entitled to an attorney. The State's own evidence shows that a request for an attorney was made *after* the interrogation, and while the Appellant and officers were en route from the Sheriff's office to the jail.

The trial court accordingly excluded from evidence oral and written statements made subsequent to this request. The trial court did, however, refuse to exclude from evidence testimony regarding the Appellant's gesture pointing to the place in the river where the victim's body was deposited. The Appellant claims this gesture had all the characteristics of an oral statement. With this we agree. However, it does not follow that reversible error must be found here.

The trial court here concluded that a request for counsel was not made until after the interrogation had been completed. There is sufficient evidence to support this conclusion.

As such, admission of the Appellant's prior oral statements admitting the killing and describing the place in which the body was deposited would not be barred. His later gesture was redundant—it was but a minor corroboration of his prior description which was competent—not poisoned fruits of an illegal confession. The original confession was admissible, and admission of testimony regarding the gesture can only be considered harmless error.

## II.

The Appellant's second contention is that there is insufficient evidence to support his conviction of first degree murder while in the perpetration of rape. This contention depends primarily upon an assumption that the Appellant's statement that he had sexually assaulted his victim was not admissible into evidence. Given the admissibility of this statement, the following evidence was presented to the jury.

The victim had been with her stepdaughter from 7:30 p.m. until 11:30 p.m., when the stepdaughter went to bed. Five minutes later, the stepdaughter heard the victim give a small gasp or scream, heard the door open and shut, and heard dogs barking outside. The defendant's car was seen parked nearby. The victim's clothing was found the next day in a hole in a nearby field. The nude body of the victim was found in the Ohio River.

Autopsy revealed that the victim had drowned, but had prior to that received a blow to the head, numerous scrapes and scratches to her thighs and abdomen, and pressure upon her neck sufficient to cause her eyelids to congest with fluid and render her unconscious. The autopsy revealed that spermatozoa had been implanted in the victim's vagina within six hours of her death. The Appellant confessed to having sexually assaulted the deceased and to murdering her.

In reviewing the sufficiency of the evidence in an appeal we look at the evidence most favorable to the state and the

reasonable inferences which may be drawn from that evidence. A verdict will not be overturned if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State,* (1975) 264 Ind. 1, 332 N.E.2d 103; *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Jackson* v. *State,* (1971) 257 Ind. 477, 275 N.E.2d 538. We find the evidence sufficient here.

## III.

The Appellant's third contention is that the trial court erred in sentencing the Appellant to two life sentences. Our agreement with this contention substantially moots the Appellant's sufficiency argument. As in *Franks* v. *State,* (1975) 262 Ind. 649, 323 N.E.2d 221, both of the Appellant's sentences cannot stand:

> "The Appellant next claims the trial court erred in sentencing him to two life imprisonment sentences for the same killing. Appellant is correct in this contention. Although the evidence sustains the jury verdict of guilty under either count, the trial court could not impose a sentence on each count. Carter v. State, (1951) 229 Ind. 205, 96 N.E.2d 273; Steffler v. State, (1952) 230 Ind. 557, 104 N.E.2d 729. We, therefore, hold that the sentence of life imprisonment on one of the counts must be vacated." 323 N.E.2d at 225.

The judgment of the trial court is affirmed and this case is remanded to the trial court with directions to vacate one of the sentences of life imprisonment.

Givan, C.J., Prentice, J., concur; DeBruler, J., concurs with opinion; Hunter, J., concurs in result.

## CONCURRING OPINION

DEBRULER, J.—Here, at the sheriff's office, the accused admitted the killing and described the location of the victim's body. He was then taken by an officer from the sheriff's office to the jail. While walking along, he asked to see his lawyer,

Marion Rice, and was assured that an officer would contact the lawyer for him. Before the lawyer arrived at the jail, the accused was taken to the riverbank and asked to point out exactly where he had thrown the body in. He physically pointed out the spot.

At trial, defense counsel did not object to the incriminating statement the accused gave at the sheriff's office, but did object to a question propounded by the prosecutor to a State's witness, which was intended to bring out the fact that the accused had physically pointed out the spot along the river. The ensuing in-trial hearing on this objection resulted in a full and fair judicial inquiry into the advice of rights and treatment provided the accused by the police from the moment of arrest up to the point in time when he admitted the killing in the sheriff's office.

There exists, therefore, a perfectly fair and rational ground upon which to ignore any possible waiver for failure to object to the admission of the incriminating statements or to make a sufficiently explicit motion to correct errors. The severity of the offense is not such a ground. It is the existence of this full and fair judicial inquiry into the events leading to the accused's making of the incriminating statements, for the purpose of determining the admissibility of the riverbank gesture, which provides, also, a basis for the decision to review the admissibility of those first incriminating statements. *Montes* v. *State,* (1975) 263 Ind. 390, 332 N.E.2d 786; *Hardin* v. *State,* (1970) 254 Ind. 56, 257 N.E.2d 671; *Wilson* v. *State,* (1943) 222 Ind. 63, 51 N.E.2d 848.

NOTE.—Reported at 341 N.E.2d 505.